[CONSTITUTIONAL LAW.]

## THE POST MASTER GENERAL OF THE UNITED STATES *against* EARLY and Others.

The Circuit Courts of the Union have jurisdiction, under the constitution, and the acts of April 30th, 1810, ch. 262. s. 29., and of March 3d, 1815, ch. 782. s. 4., of suits brought in the name of " the Post Master General of the United States," on bonds given to the Post Master General by a deputy Post Master, conditioned "to pay all moneys that shall come to his hands for the postages of whatever is by law chargeable with postage, to the Post Master General of the United States for the time being, deducting only the commission and allowances made by law for his care, trouble, and charges, in managing the said office," &c.

The Post Master General has authority to take such a bond, under the different acts establishing and regulating the Post Office department, and particularly under the act of April 30th, 1810, ch. 262. s. 29. 42.

THIS was an action of debt, commenced in the Circuit Court for the district of Georgia, by the District Attorney of the United States for that district, in the name of the Post Master General of the United States, gainst the defendants, on a bond executed by them, in June 1820, to the Post Master General of the United States, the condition of which, after reciting that Eleazer Early (one of the co-obligors and defendants in the suit) is Post Master at Savannah, provides that if he shall perform the duties of his office, " and shall pay all moneys that shall come to his hands for the postages of whatever is by law chargeable

---

a He cited Gibbons v. Ogden, 6 *Wheat. Rep.* 448.

with postage, to the Post Master General of the United States for the time being, deducting only the commission and allowances, made by law, for his care, trouble, and charges, in managing the said office," &c. " then the above obligation shall be void." The breach assigned was, that the said E. Early did not pay to the Post Master General the moneys which came to his hands, as post master at Savannah, but that the sum of 7,736 dollars and 64 cents was still in arrear and unpaid. The defendants pleaded to the jurisdiction of the Court, that this was " not a suit in which the United States are a party, nor is the debt declared on one contracted, authorized, or arising, under a law of the United States, and over which jurisdiction has been given to this honourable Court." On the argument of the cause in the Court below, the opinions of the judges of that Court were opposed upon the question of jurisdiction, and it was certified to this Court for a final decision.

1827.

Post Master General v. Early.

The cause was argued by the *Attorney General* and Mr. *Wheaton*, for the plaintiff, and by Mr. *Webster* and Mr. *Berrien*, for the defendants.

*March 9th.*

On the part of the plaintiff, it was contended, (1.) that the laws of the United States gave, and were intended to give, the jurisdiction now in question.[a] If there was any apparent discrepancy in the laws on the subject, it grew out of the fact, that the post office department existed long before the establishment of the present constitution, and Congress had dealt with it as an existing institution of the government. The laws now in force, and the usage which had grown up under them, of the Post Master General taking bonds to secure the official good conduct of his deputies, and bringing suits on them in the Courts of the Union, would be best explained by a recurrence to this historical fact. The Post Office Act of April 30th, 1810, ch. 262. s. 29. which is a consolidation of the former laws on the subject, directs the Post Master General to " *cause a suit to be commenced against any post master who does not*

a Osborn v. The Bank of the United States, 9 *Wheat. Rep.* 738. 325. 901, 902.

18.

render his quarterly accounts, and pay over the balance to the Post Master General." And provides, " that *all suits* which shall hereafter be commenced for the recovery of debts or balances due to the general post office, whether they appear *by bond or obligations* made in the name of the existing, or any preceding, Post Master General, or otherwise, shall be instituted *in the name of the Post Master General of the United States.*" The 42d section of the same act repeals the former post office laws, with a proviso, saving suits and *the bonds* given by deputy post masters for the faithful execution of their several duties and offices. The act of the 3d of March, 1815, ch. 782. s. 4. declares, " that the District Courts of the United States shall have cognizance, *concurrent with* the Courts and magistrates of the several States, *and the Circuit Courts of the United States,* of all suits at common law, where the United States, *or any officer thereof, under the authority of any act of Congress, shall sue,* although the debt, claim, or matter in dispute, shall not amount to 100 dollars." It was admitted that the clause giving the jurisdiction to the Circuit Courts, was awkwardly expressed in this last section, which seemed to have been drawn upon the supposition that the jurisdiction already resided in those Courts ; yet it was insisted that this was equivalent to a declaration of the legislative will, that it should be exercised by them, since the District Courts could not have a concurrent jurisdiction with the Circuit Courts in such suits, unless the latter had, by law, cognizance of the same. If it should be objected, that though the Circuit Courts might have cognizance of actions where any officer of the United States sues under the authority of any act of Congress, yet there is no such act authorizing the Post Master General to take the bond, on which this suit was brought: it was answered, that the authority to sue on such a bond, given in the 29th section of the act of 1810, is an implied authority to take it, and a legislative recognition of the notorious pre-existing practice of office, which is also strongly confirmed by the proviso in the 42d section, saving all suits and the bonds given by post masters. Even if it were doubtful whether he could take a bond for the faithful discharge, by his deputies, of their official duties, without an

express authority by law, a bond might certainly be taken to secure the payment of moneys due to the government in the post office department, as well as to an individual, or to a corporation.[a] A mere voluntary bond, taken at common law, for a purpose not unlawful, and adapted as means to attain the end contemplated by the statute, would be valid, and a suit might be maintained upon it in a Court of competent jurisdiction.[b]

2. If, then, the bond was a lawful bond, and the Post Master General was authorized to cause a suit to be commenced on it in his official name, and if the intention of Congress to vest jurisdiction over such suit in the Circuit Courts was sufficiently manifested, the only remaining question would be, whether the laws conferring this jurisdiction were consistent with the constitution, by which the judicial power is extended to " all *cases* in law and equity *arising under the laws of the United States,*" and to " *controversies* to which *the United States shall be a party.*" That this was a *case* arising under the laws of the Union, was self-evident; and that it was a *controversy* to which the United States is a party, would appear from an examination of the record. The suit is brought by the District Attorney of the United States, in the name of the Post Master General, not for his own benefit, but as the public agent of the government, and a trustee for the United States. The acts of public officers, within the sphere of their authority, are the acts of the government; and the money to be recovered being the property of the United States when recovered, the United States are parties to the suit.[c] There was a distinction between a formal party to the suit, and a substantial party to the controversy. This distinction might be illustrated by the ordinary principle applicable to assignments of choses in action, where the suit is brought by the assignee in the name of the assignor, but the latter cannot control it."[d] So,

1827.

Post Master
General
v.
Early.

*a* Dugan v. United States, 3 *Wheat. Rep* 172.

*b* 2 *Lord Raym.* 1459. S. C. 2 *Str.* 745. 2 *Dall.* 122. 6 *Binn.* 292. 12 *Mass. Rep.* 367. 1 *Peters' C. C. Rep.* 47.

*c* Osborn v. The Bank of the United States, 9 *Wheat. Rep.* 802

*d* 1 *Wheat. Rep.* 235. 5 *Wheat. Rep.* 277

also, the assignee of the crown has a right to sue in the name of the crown.[a]    There the crown is no party to the controversy, though a party to the suit.    Here the Post Master General is the nominal party on the record, but the United States is the real party to the controversy.    In the case of *Brown* v. *Strode*, where the suit was brought in the name of " the justices of the peace for the county of Stafford," who were citizens of Virginia, against the defendant, a citizen of the same State, to recover a debt due to a British subject, the alien was there considered as the substantial party to the suit, it being brought for his benefit.[b]    So, in England, many suits in which the public is concerned, are not brought in the name of the crown. Thus, at common law, independent of any statutory provision, the Attorney General exhibits, in his own name, an information of debt, which is called the king's action of debt; or, if a discovery is wanted, an English information in the Exchequer, called the king's bill in equity.    Here the Attorney General is the nominal party, whilst the crown is the substantial party for whose benefit the suit is brought.[c]    And the prosecutions under the revenue laws are frequently brought by the commissioners of excise and the customs, or by their order, in the name of the Attorney General; or, in minor cases, by the inferior officers of the revenue; but the public is always considered as the substantial party to the suit.[d]

For the defendants, it was argued, that whatever might be the extent of the judicial power as defined in the constitution, the tribunals inferior to the Supreme Court, and created by Congress, could only exercise such jurisdiction as was expressly conferred upon them by statute.    But, it was insisted, that this was not " a case arising under the laws of the United States," nor " a controversy to which the United States are a party."    And, in this view, it was

a  *Cro. Jac.* 82.

b  5 *Cranch*, 303.

c  *Bunb.* 225. 262. 558. 223.    *Parker*, 37. 279.    *Hale, in Hargr. Law Tracts*, 216.    2 *Anstr.* 558.    *Coop. Eq. Pl.* 21, 22.    *Mitf. Pl.* 22,    *Barton's Eq.* 59.

d  2 *East's Rep.* 362.    1 *Chitty's Com. Law*, 801. 824.

insisted, (1.) that there was no law of Congress which, in terms, required or authorized the Post Master General to take the bond on which the suit was brought. There was, indeed, no express inhibition of such a bond. but the supposed implied authority to take it was negatived by the obvious policy of the post office laws. That policy was to secure the collection of the dues to the department by requiring prompt settlements, enforced by the personal responsibility of the Post Master General, as provided in the 29th section of the act of 1810. It was not meant to rely upon this provision as constituting a ground of defence for a deputy post master sued by the Post Master General for official negligence, upon the primary obligation imposed on him by accepting the office, and not accounting for the public moneys received in his official capacity. It was only contended, that it excluded the idea of the Post Master General being authorized to take a security not expressly authorized by the law, from an agent appointed by him, removable by him, and accountable to him. This inference was supported by the new provision inserted in the 3d section of the amended post office act of 1815, expressly authorizing and requiring him to take such a bond. This was a legislative declaration, negativing the right under any pre-existing statute. The question here was not, whether this might not be good as a voluntary bond at common law. Without stopping to inquire whether the United States have a system of unwritten law, to which an official bond, not authorized by any statute of Congress, can be referred for its validity, it was said that the cases cited to show that the bond might be sustained at common law, were foreign to the present inquiry. This was a question of jurisdiction, which depended upon the other question, whether this bond, (admitting it to be valid at common law,) when made the foundation of an action, presented a case arising under the laws of the United States. To make it a case arising under those laws, the bond must not only be valid, but must be authorized by statute ; and the case could no more be said to arise under the laws of the United States, than that of a voluntary bond taken by the marshal. or the collector, from their deputies.

1827.

Post Master
General
v.
Early.

2. But even supposing the bond in question was authorized to be taken by the laws of the United States, jurisdiction of a suit brought upon it could only be vested in the Circuit Court by some express legislative enactment. Though the case may be included in the constitutional grant of jurisdiction, some act of Congress is necessary to enable the Courts to exercise it. [a] So far from Congress having conferred this jurisdiction on the Circuit Courts, the Post Office Act, whilst it is silent as to the Courts of the Union, expressly confers it on the State Courts. As to the Judiciary Act of 1815, s. 4. the title of that act shows the intention of Congress to limit its operation to the State Courts and to the District Courts of the United States. If it can be construed to extend to the Circuit Courts of the Union, its effect is merely to give them jurisdiction in the specified cases where "the debt, claim, or matter in dispute, shall not amount to 100 dollars." The words "concurrent with the Circuit Courts," were not intended to give jurisdiction to those Courts. Similar expressions are found in the 9th and 11th sections of the Judiciary Act of 1789, but it had never been supposed that such was their effect. It is possible that the act was passed, upon the mistaken supposition that the jurisdiction was already vested in the Circuit Court. But this could not make the law; and the Court would not construe this particular act contrary to its plain intent, however erroneous the opinion which produced it.

3. The remaining question was, whether the United States were a party to the suit. And even admitting that the proceeds would accrue to their benefit, that the money which the bond was given to secure was their money, for which assumpsit could have been maintained against the principal obligor in their name; still, as it regarded the co-obligors or sureties, this was a new contract, not depending on any pre-existing debt, liability, or obligation from them to the United States. Their obligation arises exclusively from the bond, which binds them to the Post Master General alone; no action could be maintained against them by the

a Bank of the United States v. Deveaux, 7 *Cranch.* 85. M'Intire v. Wood. 7 *Cranch,* 503

United States, upon the bond, or in the form of an express or implied assumpsit to recover the money, the payment of which the bond was intended to secure. Could, then, the United States be considered as parties to the suit, for the purpose of giving the Court a jurisdiction, which it would not take if they were, in fact, parties to the suit, or, (in the words of the Judiciary Act of 1789,) "plaintiffs or petitioners?" The jurisdiction, as derived from the character of the parties, must depend, not on the question who is the substantial party in interest, but who is the formal party on the record.[a] Independent of the circumstance that the United States had no interest on the face of the bond, which would entitle them to maintain an action on it, they are inhibited from being parties to the suit, even as against the principal obligor, by the express provisions of the Post Office Act of 1810, s. 29., which directed that all such suits "shall be commenced in the name of the Post Master General of the United States." Even supposing, therefore, that Congress has legislated upon the unfounded assumption that the jurisdiction was already vested in the Circuit Court, or supposing that the case is a *casus omissus*, can the judicial power correct the mistake, or supply the defect? Even in the case of choses in action, assigned to the United States as collateral security for debts due to the government, the defect of jurisdiction was incontestible, and attended with great practical inconveniences; and yet Congress has recently refused to supply it, by authorizing suits upon such securities to be brought in the Courts of the Union. The case of *Dugan* v. *The United States*,[b] went upon the ground, that in all cases of contract with the United States, they had a right to enforce it by an action in their own names, unless a different mode of suit was prescribed by law. But if, in that case, the treasurer of the United States had been authorized and required to sue, in his official name, on all bills which should be endorsed to him for account of the government, would this Court have sustained jurisdiction of an action brought on such bills by the United States in their own name?

a Osborn v. Bank of the United States, 9 *Wheat. Rep.* 855—857
b 3 *Wheat. Rep.* 172.

1827.

Post Master
General
v.
Early.

March 15th.

History of the
post       office
laws.

Mr. Chief Justice MARSHALL delivered the opinion of the Court, and after stating the case, proceeded as follows :

The post office department was established at the commencement of the revolution, under the superintendence of a Post Master General, who was authorized to appoint his deputies, and was made responsible for their conduct. Soon after the adoption of the present government, in September, 1789, Congress passed a temporary act, directing that a Post Master General should be appointed, and that his powers, and the regulations of his office, should be the same as they last were, " under the resolutions and ordinances of the last Congress." The power of appointing deputies, therefore, and the responsibility for their conduct, still remained with the Post Master General.

This act was continued until the first day of June, 1792. In February, 1792, an act was passed detailing the duties and powers of the Post Master General, and fixing the rates of postage. It directs his deputies to settle at the end of every three months, and to pay up the moneys in their hands ; on failure to do which, it becomes the duty of the Post Master General " to cause a suit to be commenced against the person or persons so neglecting or refusing. And if the Post Master General shall not cause such suit to be commenced within three months from the end of every such three months, the balances due from every such delinquent shall be charged to and recoverable from him." This act was to take effect on the first of June, 1792, and to continue for two years. In May, 1794, a permanent act was passed. It retains the provision requiring the Post Master General to settle quarterly with his deputies, but omits that which makes it his duty to cause suits to be instituted within three months after failure.

In March, 1799, the subject was again taken up, and Congress passed an act, which retains the clause making it the duty of the deputy post masters to settle their accounts quarterly, and reinstates that which directs the Post Master General to cause suits to be instituted against delinquents ; substituting six months in the place of three, after the expiration of the quarter, under the penalty of being himself chargeable with the arrears due from such delinquent. This

act declares, that all causes of action arising under it may be sued before the judicial Courts of the several States, and of the several territories of the United States.

1827.

Post Master
General
v.
Early.

In April, 1810, Congress passed an act for regulating the post office establishment, which enacts, among other things, that all suits thereafter to be brought for the recovery of debts or balances due to the general post office, should be instituted in the name of " the Post Master General of the United States." This act also authorizes all causes of action arising under it to be sued in the Courts of the States and territories.

Effect of the act of 1810, taken in connexion with the Judiciary Act of 1815, s. 4. upon the question of jurisdiction.

In March, 1815, Congress passed "an act to vest more effectually in the State Courts, and in the District Courts of the United States, jurisdiction in the cases therein mentioned."

This act enables the State Courts to take cognizance of all suits arising under any law for the collection of any direct tax or internal duties of the United States. The 4th section contains this clause : " And be it further enacted, that the District Court of the United States shall have cognizance, concurrent with the Courts and magistrates of the several States, and the Circuit Courts of the United States, of all suits at common law where the United States, or any officer thereof, under the authority of any act of Congress, shall sue, although the debt, claim, or other matter in dispute, shall not amount to one hundred dollars." On these several acts the question of jurisdiction depends.

The suit is brought for money due to the United States ; and, at any time previous to the act of 1810, the suit for the money, had no bond been taken, might have been brought in the name of the United States. It is not certain that, independent of the bond, it could have been instituted in the name of any other party. The Courts of the United States, had, of course, jurisdiction. The laws make it the duty of the Post Master General to " cause suits to be instituted," not to bring them ; and it was not until March, 1799, that Congress authorized these suits to be instituted in the State Courts. It is obvious, that the right to institute them in those Courts, anterior to the passage of that act, was doubted ; at any rate, was not exercised ; for it could not have

been deemed necessary to give expressly the power to suc in those Courts, had the power been admitted to exist, and been commonly exercised. We must suppose, then, that these suits were usually instituted in the Courts of the United States ; and no doubt could be entertained on the question of jurisdiction, if they were brought, as they certainly might have been, in the name of the United States.

The act of 1810 directed, that all suits for debts, or balances due to the general post office, should be brought in the name of the Post Master General. The manner in which this change in the style of the suit might affect jurisdiction, was not noticed, and no provision was made for this new state of things. These debts and balances which were due to the general post office, were not due to the officer personally, but to the office, and were to be sued for, and collected for the United States. The money belonged to the nation, not to the individual by whose agency it was to be brought into the treasury. The whole course of opinion, and of legislation, on this subject, is, that, although for convenience, and to save expense to the debtors, recourse may be had to the State Courts for the recovery of small sums, yet a right to resort to the Courts of the Union in suits for money due to the United States, was never intended to be relinquished. If the effect of any provision in a statute be to abolish this jurisdiction, it must be an effect which was neither intended nor foreseen. That construction which will produce a consequence so directly opposite to the whole spirit of our legislation, ought to be avoided, if it can be avoided without a total disregard of those rules by which Courts of justice must be governed.

If the question had rested solely on the act of 1810, it is probable that the aid of the legislature might have been thought indispensable to the jurisdiction of the federal Courts, over suits brought for the recovery of debts and balances due to the general post office. But it does not rest solely on that act. The act of 1815 contains a clause which does, we think, confer this jurisdiction. It cannot be doubted that this clause vests jurisdiction expressly in the District Courts, in all suits at common law where any officer of the United States sues under the authority of any act of Con-

gress. The Post Master General is an officer of the United States, who sues under the authority of the act of 1810, which makes it his duty to sue for debts and balances due to the office he superintends, and obliges him to sue in his own name.

It has been contended, that this clause, if it gives jurisdiction, gives it only where the demand is under one hundred dollars. We do not think the words will sustain this criticism.

The right to take cognizance of suits brought by any officer of the United States, under authority of any act of Congress, is first given in general words, comprehending sums to any amount. The limitation which follows is not a proviso that the sum shall not exceed the sum of one hundred dollars; it is no restriction on the previous grant, but an enlargement of it, if an enlargement should be thought necessary. This act might be construed, in connexion with the Judiciary Act of 1789, and a general clause giving jurisdiction might be limited as to amount to the sum mentioned in the 9th section of that act. The subsequent words, therefore, of the section we are considering, were introduced for the purpose of obviating this construction, and removing the doubt, which might otherwise exist, of the right to take cognizance of sums less than one hundred dollars. After giving the jurisdiction generally, the words are, " although the debt, claim, or other matter in dispute, shall not amount to one hundred dollars." These words do not confine the jurisdiction previously given to one hundred dollars, but prevents it from stopping at that sum.

The jurisdiction of the District Courts, then, over suits brought by the Post Master General for debts and balances due the general post office, is unquestionable. Has the Circuit Court jurisdiction ?

The language of the act is, that the District Court shall have cognizance concurrent with the Courts and magistrates of the several States, and the Circuit Courts of the United States, of all suits," &c. What is the meaning and purport of the words "concurrent with" the Circuit Courts of the United States ? Are they entirely senseless ? Are they to be excluded from the clause in which the legislature has in-

1827.

Post Master
General
v.
Early.

serted them, or are they to be taken into view, and allowed the effect of which they are capable?

The words are certainly not senseless. They have a plain and obvious meaning. And it is, we think, a rule, that words which have a meaning, are not to be entirely disregarded in construing a statute. We cannot understand this clause as if these words were excluded from it. They, perhaps, manifest the opinion of the legislature, that the jurisdiction was in the Circuit Courts; but ought, we think, to be construed to give it, if it did not previously exist. Any other construction would destroy the effect of those words. The District Court cannot take cognizance concurrent with the Circuit Courts, unless the Circuit Courts can take cognizance of the same suits. For one body to do a thing concurrently with another, is to act in conjunction with that other; it is equivalent to saying, the one may act *together with* the other. The phrase may imply, that power was previously given to that other; but if, in fact, it had not been given, the words are capable of imparting it. If they are susceptible of this construction, they ought to receive it, because they will otherwise be totally inoperative, or will contradict the other parts of the sentence, which show plainly the intention, that the District Court shall have cognizance of the subject, and shall take it to the same extent with the Circuit Courts.

Operation of a legislative enactment, having the effect of a declaratory act, as to the future, though inoperative on the past.

It has been said, and perhaps truly, that this section was not framed with the intention of vesting jurisdiction in the Circuit Courts. The title of the act, and the language of the sentence, are supposed to concur in sustaining this proposition. The title speaks only of State and District Courts. But it is well settled, that the title cannot restrain the enacting clause. It is true that the language of the section indicates the opinion, that jurisdiction existed in the Circuit Courts, rather than an intention to give it; and a mistaken opinion of the legislature concerning the law, does not make law.

But if this mistake is manifested in words competent to make the law in future, we know of no principle which can deny them this effect. The legislature may pass a declaratory act, which, though inoperative on the past, may act

in future. This law expresses the sense of the legislature on the existing law, as plainly as a declaratory act, and expresses it in terms capable of conferring the jurisdiction. We think, therefore, that in a case plainly within the judicial power of the federal Courts, as prescribed in the constitution, and plainly within the general policy of the legislature, the word ought to receive this construction.

So far as the suits brought by the Post Master General were referred to in argument, in the case of *The Bank of the United States* v. *Osborn*, this construction was assumed as unquestionable. As the act was referred to for the sole purpose of illustrating the argument on the point then under consideration, it was not examined with the attention which has since been bestowed upon it; but the opinion then expressed, that the section we have been considering conferred jurisdiction on the Courts of the United States over suits brought by the Post Master General, was correct.

Had this suit been brought to recover the balance due from the deputy post master, on his original liability to pay the money in his hands, no doubt would have been felt respecting the jurisdiction of the Court. The act of 1810 gives the Post Master General a right to sue for such balances, and the act of 1815 enables him to sue in the Circuit or District Courts of the United States. But it is contended that he has no right to secure such balances by bond; and, consequently, the bond being unauthorized, the act of Congress cannot be construed to authorize a suit upon it.

Were it even true that an official bond cannot be taken in a case where it is not expressly directed by law, we do not think that a bond taken to secure the payment of a sum of money is void, because it is also an official bond. Even supposing this bond to be void, so far as it is intended to stipulate for the performance of official duties, it is not necessarily void, so far as it stipulates for the payment of money of the United States, which might come to the hands of the deputy post master. That part of the condition which shows the bond was taken to secure the payment of money which should be received for the United States, is not vitiated by that part of it which shows that it was also taken

1827.

Post Master
General
v.
Early.

to secure the general official conduct of the deputy. Now, a part of the condition is expressly "that if he shall pay all moneys that shall come to his hands, for the postages of whatsoever is by law chargeable with postage," then the obligation is to be void. The obligation itself, on which the suit is brought, was intended to secure the payment of money collected for the United States, as well as the official conduct of the deputy; and as no law prohibited such an official bond, we cannot think, although it might not in itself be valid, that it would destroy an obligation taken for a legitimate purpose. As the breach assigned is altogether in the non-payment of the money collected, we do not think that, if a bond would be good, taken for this single object, it is made bad by being extended also to the official conduct of the obligor.

The Post Master General may take bonds to secure the payment of moneys due to the general post office.

The inquiry then is, whether, under a fair construction of the acts of Congress, the Post Master General may take bonds to secure the payment of money due, or which may become due, to the general post office.

All the acts relative to the post office, make it the duty of the Post Master General to superintend the department, to regulate the conduct and duties of his deputies, and to collect the moneys received by them for the general post office. May not these powers extend to taking bonds to the officer who is to perform them? May not these bonds be considered as means proper to be used in the collection of debts, and in securing them?

If this interpretation of the words should be too free for a judicial tribunal, yet if the legislature has made it, if Congress has explained its own meaning too unequivocally to be mistaken, their Courts may be justified in adopting that meaning.

The 22d section of the act of 1799, after directing the Post Master General to sue for all balances due from his deputies, within six months after the expiration of the three months within which they ought to have been paid, enacts, "that all suits, which shall be hereafter commenced for the recovery of debts or balances due to the general post office, whether they appear by *bond or obligations* made in the name of the existing or any preceding Post Master General,

or otherwise, shall be instituted in the name of the Post Master General of the United States."

These words follow immediately the clause which makes it the duty of the Post Master General to sue for the money due from his deputies, and are obviously applied to the moneys in their hands. They show the sense of the legislature, that this money may be a " debt" or a " balance," may " appear by bond or obligation," or otherwise ; and are, we think, a legislative exposition of the words, describing the power and duty of the Post Master General in the superintendence of his department, and the means he may employ for collecting the money due from his deputies.

The 31st section of the same act, repeals the previous laws for establishing the post office department, after the 1st day of the ensuing May ; and adds a proviso to the repealing clause, that as to " all bonds, contracts, debts, demands, rights, penalties, or punishments, which have been made, have arisen, or have been incurred," &c. " the said acts shall have the same effect, as if this act had not been made."

It is said by the counsel for the defendants, that these words do not give efficacy to the bonds to which they refer, but leave them as they were anterior to the repealing act. This is true. But they explain the sense of the legislature, respecting the powers of the Post Master General, and the manner in which he might execute those powers.

An additional proviso extends even to official bonds. After continuing the Post Master General and all his deputies in office, it adds, " and also the bonds which they or either of them have or may give for the faithful execution of their several duties, shall continue to have the same force and effect, to all intents and purposes, after the 1st day of May next, as though this act had not been made."

This proviso, also, is no more than a recognition of the validity of those bonds ; but it is a recognition of it, and goes the full extent of showing the legislative opinion that they might be taken. The act of 1810 repeals former acts, and contains the same provisions on this subject with the act of 1799.

The Court has felt the pressure of this part of the case.

1827.

Post Master
General
v.
Early.

There is always difficulty in extending the operation of words beyond their plain import; but the cardinal rule of construction is, that where any doubt exists, the intent of the legislature, if it can be plainly perceived, ought to be pursued.    It is also a rule, that the whole law is to be taken together, and one part expounded by any other, which may indicate the meaning annexed by the legislature itself to ambiguous phrases.    The words describing the power and duty of the Post Master General, may be expounded by other parts of the act showing the legislative opinion as to their extent; and if this be true, the sections which have been cited cannot be misunderstood.    They show plainly that the legislature supposed it had given the Post Master General authority to take these bonds.

A case cannot exist, in which effect may be given to the legislative intent more safely than in this.    The bonds are taken in a case where no doubt can exist respecting the right and propriety of giving authority to take them; they are for money due to the United States; and the opinion of the legislature that authority was given, is expressed in as plain words as can be used.    The acts of Congress sustain the opinion, that they have been taken with the knowledge and approbation of the legislature, from the first establishment of the offices ; and provision is made by law for their being put in suit.    The Courts of the United States have, until very lately, uniformly given judgments on them.

Under these circumstances, we think ourselves justified in continuing to sustain them, and to certify, in this case, that the Circuit Court has jurisdiction of the cause.