Milligan, J.,
delivered the opinion of the Court.
On the 20th of October, 1865, the complainants, Samuel N. Fain, Wm. D. Fain, and Horace W. King, late partners of the mercantile firm of “Fain & King,” filed their attachment hill in the Chancery Court at Dandridge, against the defendants, Joseph W. Headerick and Almegro Noel, alleging that Joseph W. Headerick was indebted to them, in various sums of money, due by notes of hand, &c.; and seeking by attachment, to secure the payment thereof.
The bill alleges that the defendant, Joseph W. Head-erick, was the owner of a valuable tract of land, in *329 Jefferson County, wbicb contained about 921 acres, and which, in October, 1862, he had sold to his co-defendant, Almegro Noel, for the sum of $18,000 in Confederate Treasury notes. Ten thousand dollars of which were paid in hand, and the remainder, by agreement, was payable in one, two, and three years.
Noel took possession in 1863, and tendered the two first installments when due, in Confederate money, which was refused by Headeriek, leaving $8,500 of the original sum still unpaid.
On the 3d of June, 1865, Joseph W. Headerick sold, and by deed conveyed the same land, for the consideration of $8,500, to his son, Charles H. Head-erick, which was duly registered on the day of its execution. No part of this sum appears to have been paid; and afterwards, on the 10th day of July, 1865, the two Headericks and Noel, under bond, submitted all the matters of controversy, growing out of the sale to Noel, and the payments made thereon, to the arbitrament and award of L. F. Leiper, James Fuller and A. K. Meek, who afterwards returned their award, in which, among other things, they decided that Noel could not specifically execute his contract; but as he had paid $10,000, in Confederate money, upon it, “he should continue to hold the possession of said land, and a lien on it, for the sum of $12,800, 'for payments and damages, which if paid within one month from the date of the award, the said Noel shall give said Headeriek the possession of said land, by the 1st day of January, 1866; or in the case of failure on the part of said *330 Headerick to make said payment, that said Noel proceed to advertise and sell said land, for cash in hand.”
The hill further charges, that the deed from Joseph W. Headerick, to his son, Charles H., was strictly voluntary, and void as to creditors; and the contract of sale between the former and Noel, was also void, because founded on an illegal consideration; and the award, consequently, inoperative to confer any higher or other rights upon the parties to it than they enjoyed before.
It is also alleged that Noel is about to sell the land, and by attachment it is sought to subject it to the payment of the complainants’ debts.
Shortly after ' this bill was filed, five other similar bills were filed, seeking the ■ same relief. Among which was one filed on the 11th day of April, 1866, by Andrew Ramsey, against the same defendants, in which it is alleged, on the 21st day of August 1865, he recovered a judgment against Joseph W. Headerick, B. Headerick, and F. W. Taylor, Administrators of L. D. Franklin, for $2,241.91, and costs, and that execution issued thereon, which, for want of ■ personal property, was levied on the lands of Joseph W. Headerick, then occupied by his co-defendant, Almegro Noel, under an illegal and void contract of sale
It is further alleged, that the deed from Joseph W. Headerick to his son, Charles H., was not only fraudulent and void, as having been made to hinder and delay creditors, but champertous, because of Noel’s adverse possession. The bill also impeaches the award, and *331 avers that the deed and award form a cloud upon the title to the land, which the complainant seeks to remove, and subject the same to the satisfaction of his judgment.
Noel answered, which, by consent, was taken as an answer to all the bills. His answer is filed as a cross-bill. He does not controvert the justice of the claims against his co-defendant, Joseph W. Headerick, but says he bought 800 acres of land of Joseph W. Headerick, on the 17th of September, 1862, for $18,000 in Confederate bonds, and that he has paid $10,000 in the same funds, except $150 in salt. The balance, he alleges, was tendered in Confederate money, and refused. The execution of the deed from Joseph W. Headerick to his son, Charles H. Headerick, is admitted, but it was executed with full knowledge that the land had been previously conveyed to the respondent, and that the vendee, Charles H. Headerick, had paid rent for the same, for the years 1863 and 1864.
The respondent relies on the award of the arbitrators, and insists that the contract between him and Joseph W. Headerick, was executed. He avers his vendor executed to him a title-bond, which has been lost, or mislaid, and under which he took possession, and has held it ever since; and notwithstanding the illegal consideration paid for the land, the respondent insists that the submission and award make it valid and legal, and as such, capable of being enforced in a Court of Equity.
He also alleges, that, pursuant to the award, he caused the lien declared on the land by the arbitrators *332 to be enforced, and the land to be sold, which he purchased at the sum of $12,800.
It is also insisted, that the two Headericks are bound by the award, because they were present and consenting thereto; and that Ramsey’s judgment constituted no lien upon the land, because the legal title was in Charles H. Headerick, and the equitable title in respondent.
The two Headericks answered the original bill filed by Eain, and also file their answer as a cross-bill, against Noel. They admit, substantially, the allegations in the bill, but insist that the award was founded on an illegal consideration, and utterly void.
Joseph W. Headerick and Charles H. Headerick answer Ramsey’s bill, and the former insists, that the sale to Noel was in parol, and that the sale to Charles H. Headerick was in good faith, and without fraud, &c. Charles H. Headerick denies all fraud and champerty.
The defendants demur to Noel’s cross-bill, which the Chancellor sustained, and in his final decree, declared the deed from Joseph W. Headerick to Charles H. Headerick champertous and void, and that neither the submission bond and award, or the title bond to Noel, were so proven and registered as to prevent the lien of Ramsey’s judgment, and the levy of the other attaching creditors, the legal title being in the defendant, Joseph W. Headerick; and that Ramsey’s bill was properly filed to remove the cloud on the title; and directed a sale of the lands, reserving the question of the application of the fund, &c.
*333 Under this general state of the facts as presented in the pleadings, there being little or no evidence in the case, various questions are presented in argument, -which, we think, may all be resolved into two.
1st, What was the operation and effect of the deed from Joseph W. Headerick to his son, Charles H. Headerick, dated the 3d of June, 1865, and registered on the same day, as to the creditors of the vendor?
2d, Did the submission bond, and award, although springing out of an illegal consideration, together, form a new contract which a Court of Equity can enforce ?
The precise nature of the contract between Joseph W. Headerick and his co-defendant, Almegro Noel, does not distinctly appear. Noel alleges that it was in writing, and evidenced by a bond for title, which has been lost or mislaid; while Headerick, the bargainor, denies that there was any title bond executed. Both admit the sale, and Noel’s possession under it, together with his payment of $10,000, in Confederate Treasury Notes, of the purchase money. But whether the contract was verbal or in writing, does not appear; nor do we think, in the view we have taken of the case, it is material; for whether the contract of sale rested in parol, or was evidenced by memorandum in writing, it is clear that the defendant, Noel, held the possession for himself, and adversely to his vendor. This fact is manifested by the averments in the pleadings, as well as the recitals in the submission bond; and it being established, and the character of Noel’s holding known to his vendor, Joseph W. Headerick, under the principles *334 of the case of Bullard vs. Capps, 2 Hum., 409, the transaction is subjected to the laws against champerty.
The fact that the Code, sec. 1780, declares that: “If any person sell any lands or tenements, not having possession of them by himself, agent, or tenant, the same being adversely held by color of title, champerty shall be presumed until the purchaser shows that such sale was bona fide,” can make no difference. This provision of the Code was drawn from the last clause of the first section of the Act of 1821, ch. 66, which indirectly underwent construction in the case of Bullard vs. Capps, above cited. That was a case of renting for two years, in which the tenant disclaimed his landlord’s title, and assumed to hold for himself; and the Court say, in delivering its opinion: “That the moment the disclaimer of the tenant is known to the landlord, his possession becomes adverse, and this adverse possession continuing seven years, the Statute of limitations form a bar to the landlord’s recovery. But it does not require any length of adverse possession, to make a sale and conveyance of the land so possessed by another, champertous. The fact that it is adversely held is enough. ■ And that fact occurs in the case of a tenant so soon as his disclaimer is known.”
It is true, the relations of one who enters into the possession of land under a verbal contract, in many respects, are unlike those subsisting between landlord and tenant.
“The former,” says this Court, in the case of James vs. Patterson’s Lessee, 1 Swan, 309, “enters to hold ex *335 clusively for himself; he is neither to render rent, or other service, in consideration of his possession; nor is he to restore the possession of the premises to the seller-
“Ile owes no fealty to the seller, and in claiming to hold in opposition to him, or in refusing to surrender the possession to him, he is guilty of no breach of faith.
“On the contrary, his claim to hold for himself, is consistent with the contract, under which he was let into possession.”
But, while all this is true, by mere implication of law, it has been holden, that a person in, by verbal purchase, is, for some purposes, to be held as a “quasi tenant” of his vendor; Chilton vs. Niblett, 3 Humph., 404; Valentine vs. Cooley, Meigs’ Rep., 613. And in such case, in the absence of proof to the contrary, he will, by mere implication of law, be presumed to hold, in that character of “tenant at will,” of the vendor: 1 Swan, 309, 312.
But, very slight evidence will rebut this presumption, which, as we have seen, rests merely upon implication, or construction of law, and does not arise out of contract. In fact, as was held in the case of James vs. Patterson’s lessee, it is the duty of the vendor, having transferred the possession of the premises to the purchaser, under contract of sale, and imposed upon him no obligation to hold the possession for him, if he wishes to repudiate and avoid the contract, to take notice how the purchaser is holding; otherwise, the Statute will bar his right of entry under th”e second section of the Act of 1819.
*336 New, applying these principles to the facts of this case, it is obvious, that the conveyance by Joseph W. Headerick, to his son, Charles H. Headerick, with full knowledge of the character in which Noel was holding, was within the acts against champerty, and therefore utterly void.
2d, In answer to the second proposition, - admitting that the contract of sale between Jos. W. Headerick and his co-défendant, Noel, was founded on an illegal consideration, which, out of respect to public policy, could not be enforced, it is insisted, that the submission bond and award, together, form a new contract, predicated on one hundred and fifty dollars in salt, delivered upon the original contract, the saving of the fees, costs, delay and expenses, incident to a law suit, which are sufficient to uphold it.
The contract of sale, is clearly shown to be for Confederate money; but Noel says, in his answer and cross bill, that he paid $150.00 in salt, which was included ¡¿n the ¿$10,000 admitted to have been paid. Joseph W. Headerick, in his answer and cross-bill, states that the sum of $10,000 was paid in the notes and bonds of the Confederate States; thus substantially denying the allegation in the defendant, Noel’s, cross-bill. There is no proof on this point in the record; but, throughout the whole record, the payment is treated as having been made in Confederate money, and we are left, under the facts of the case, without discretion to treat it in any other light.
Then, what is the effect of the submission and award of the arbitrators, on the rights of the parties ?
*337 It is clear, from an inspection of tbe provisions of tbe Code, sec. 3432, et seq., on tbe subject of arbitration, that they are, in tbeir terms, but little, if any, broader than tbe provisions of tbe Act of 1806, chap. 46, on tbe same subject, from which tbe former was manifestly drawn. It follows, therefore, that the doctrine on tbe subject of awards, announced in tbe case of Haley vs. Long, Peck’s Reports, 93—101, has not been superseded by legislation, or overruled by any adjudication of this Court, of which we have knowledge.
In that case, tbe doctrine is announced, that when there is a submission to arbitration, that tbe arbitrators cannot act contrary to law. They generally have a wider range, in tbe adjustment of tbe matters in dispute, than could be exercised by a Court, and tbeir action is always favorably construed. But they cannot, as a general rule, award any thing contrary to law, (Morgan vs. Mather, 2 Vessey, Jr., 18,) for tbe parties intend to submit to them only tbe legal consequences of tbeir transactions and engagements: 6 Taunt., 225; Kyd on Awards, 184, E. 4.
This doctrine is founded in tbe most obvious reason, as well as authority. Parties submitting tbeir disputes to the arbitrament of tbeir own chosen judges, are presumed to do so upon considerations of dispatch, the saving of time, expense and trouble; and not to gain any supposed benefit by a settlement of tbeir disputes, by any other rules or principles of law or equity, than would be applied in tbe judicial forums. To bold otherwise, would be to stigmatize tbe law itself, as not founded on reason and justice, or calculated to settle tbe disputes of mankind, upon principles of morality and right.
*338 But, notwithstanding these rules, arbitrators, under a general submission, are presumed to be the judges of the law, and the facts necessary to their decision; and a mistake in the law, if the award is founded upon principles of equity and good conscience, will not generally be sufficient to set it aside. But, if they assume to decide strictly according to law, and mistake it, although the mistake is made out, says Judge Story, by extraneous evidence, that will be sufficient to set it aside: 2 Story’s Equity Juris., secs. 1454, 1455.
But, can an award, springing out of an illegal contract, which no Court can enforce, stand on any higher ground than the contract itself? Is the contract purged of its illegality, by the award? We think not; and we apprehend, no authority can be found, that goes to this extent. True, there is a class of cases, which have been relied on in argument, which hold that bonds or other deeds, executed in cases not malum in se, are void as to such conditions, covenants, or grants, which are illegal, and are good as to all others, which are legal and unexceptionable in their purport: United States vs. Bradley, 10 Peters, 360; 12 Wheaton, 136; 5 Peters, 293 and 375.
But this case does not fall within the principles of those cases. Here, as we have seen, there is no part of the consideration of the contract of sale, sufficiently proven, which is legal, that could support either the contract or award. Both are illegal, and against public policy; and the award, although the arbitrators declare they cannot execute the contract, does, in effect, do what the arbitrators say they cannot legally do. They de *339 clare tbe payment on tbe contract, of $510,000, together with $2,800 damages, to be a debt against the vendor, which is charged upon the land, and authorize the purchaser to enforce the lien thus assumed to be created, by a sale of the land. Noel has sold the land, and now, under this device, claims title to it, free from all illegal considerations. This cannot be done. It differs in no essential respect, from a direct execution of the original contract. A Court of Equity, looks at the substance of things, and is not to be defeated in the rightful exercise of its power, by the- colorable paraphernalia that may be thrown around any illegal transaction.
The award is highly exceptionable on other grounds, which we do not feel it necessary to notice, as the objections above indicated, are fatal to it.
There is no error in the Chancellor’s 'decree, dismissing the defendant, Noel’s, cross-bill, on demurrer, and subjecting the land to the creditors of the defendant, Joseph W. Headerick.